(160 App. Div. 344)

## LORD ELECTRIC CO. v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, First Department. January 9, 1914.)

1. BRIDGES (§ 20*)—CONSTRUCTION—DAMAGE TO WORK—FIRE—LIABILITY OF CONTRACTOR.

Where a contract for surface construction of the Manhattan Bridge provided that the contractor should take ample precautions to protect the work against fire, and required him to make good all parts of the work damaged during the construction, such clause applied to damages for which the contractor was responsible in the construction of the work as a whole, i. e., to the entire bridge, and not merely to the particular part of the work which he contracted to perform, and this notwithstanding a further provision of the specifications under the head "Protection of Existing Work," requiring him to protect the masonry piers and anchorages by such means as should be prescribed by the engineer.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 37–44, 46, 47; Dec. Dig. § 20.*]

2. BRIDGES (§ 20*)—PERFORMANCE—INJURY TO WORK—NEGLIGENCE OF SUBCONTRACTOR.

A contract for the surface construction of the Manhattan Bridge provided against assignment of any part thereof, requiring the contractor to protect the entire erection against injury by fire and to take proper precautions to protect the finished work pending the completion of the contract, but that such precautions should not relieve the contractor from any damage that might occur during construction. The contractor, desiring to employ an asphalt company to do the asphalt work on the bridge, procured the assent of the commissioner of the department of bridges, subject, however, to the condition that it was not a consent to an assignment by plaintiff to the asphalt company of any part of plaintiff's contract or any of the moneys to become due or payable thereunder. Held, that plaintiff, notwithstanding such consent, remained liable as before for failing to take ample precautions against fire and was bound to repair damages caused by fire to any part of the bridge by its own negligence or that of the asphalt company.

[Ed. Note.—For other cases, see Bridges, Cent. Dig. §§ 37–44, 46, 47; Dec. Dig. § 20.*]

Appeal from Trial Term, New York County.

Action by the Lord Electric Company against the City of New York. From a judgment for plaintiff, defendant appeals. Reversed, and complaint dismissed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Clarence L. Barber, of New York City (Terence Farley, of New York City, on the brief), for appellant.

Frederick Hulse, of New York City, for respondent.

LAUGHLIN, J. This action was brought to recover a balance alleged to be due and payable for work performed and materials furnished under a contract in writing, bearing date June 18, 1909, for bridge construction work. The amount earned and unpaid on the contract was not controverted; but the city pleaded that plaintiff was guilty of breaches of the contract in failing to take proper precautions to prevent damages by fire, and thereby became responsible for causing two fires on the work, resulting in damage to parts of the bridge not constructed by plaintiff, and that plaintiff failed to repair such damaged parts of the bridge after due demand, although it was its duty so to do under the contract, and that on such failure the repairs were made by defendant at the reasonable cost and expenditure of the balance unpaid on the contract. It was proved upon the trial that in the final certificate for this contract work the chief engineer of the department of bridges certified that these fires were due to the manner in which the work was performed, and that the contractor was responsible therefor, and that the damages caused thereby aggregated the amount deducted from the contract price of the work, being the amount for which this action is brought. This claim on the part of the city was disallowed by the trial court as matter of law, and defendant duly excepted.

The city through its department of bridges was engaged in constructing the Manhattan Bridge over East river. It evidently first let the general masonry and steel construction work. On the 18th day of June, 1909, the structural construction work had so far progressed that the city through the department of bridges entered into a contract with plaintiff for certain surface construction work described in the specifications in general terms as follows, viz.:

"In general this contract and the specifications and plan forming a part thereof will cover the furnishing of all materials and workmanship necessary for the construction of the metal railings, stairways, grilles and tablets, the police shelters, benches, etc., the roadway pavement and underflooring, the sidewalk paving, the complete track work on lower deck and the complete lighting system, all as more fully specified hereinafter, for the suspended spans, towers, anchorages and approach spans of the Manhattan Bridge, included between the abutment at Division street in the borough of Manhattan, and the abutment at Sands street, in the borough of Brooklyn; and the construction of the temporary roadway and footwalk approaches on the terminal property in the boroughs of Manhattan and Brooklyn."

The plaintiff maintained a night watchman on the work, but on the evening of November 12, 1909, it discharged him, and that night a fire originated in its toolhouse or watchman's shanty on the bridge, causing damage to the granite work to the extent of $65. Plaintiff, with the consent of the defendant, employed the Barber Asphalt Company to do the asphalting included in its contract. The asphalt com-

pany used six large iron kettles for heating tar and asphalt. The kettles rested on sand spread over two layers of brick under which was a platform of two-inch spruce planking which rested on cars each of which held two kettles. There was a fireplace in the side of each kettle. On the 25th day of March, 1910, the employés of the asphalt company overheated a kettle of tar or of tar and asphalt, and the planking underneath burned, letting the kettle fall through the bottom of the car, and the fire spread and damaged the ties and other work to an extent which it required the expenditure of $27,488.56 to replace and repair. The engineer had previously notified both plaintiff and the asphalt company that extra caution must be exercised in heating the kettles and that on windy days no fires should be started under them. There was a conflict in the evidence as to whether the day of the last fire was windy.

The specifications which became part of the contract provided, under the heading "Damaged Parts," that:

"All parts damaged during erection, as well as at any other time prior to the final acceptance of the work, shall be made good to the satisfaction of the engineer and at the cost of the contractor."

And under the heading "Protection Against Fire" that:

"During the entire erection of the work ample precaution shall be taken to protect it against injury by fire."

The contract proper provides, among other things, that the contractor "will not assign, transfer, convey, sublet or otherwise dispose of this contract, or his right, title or interest in or to the same or any part hereof, without the previous consent in writing of the commissioner indorsed hereon or hereto attached." Also, that:

"The contractor shall take proper precautions, under the directions of the engineer, to protect the finished work from injury pending the completion of the entire contract. Such precautions shall not relieve the contractor from the obligation to make good any damage which may be incurred during construction."

And required the contractor to take the usual precautions by placing guards and lights to prevent accidents and injuries to persons and damage to property, and provided that the contractor should indemnify and save the city harmless from claims for such injuries and damages caused "by or on account of any act or omission of the contractor, his servants or agents, and the whole or so much of the moneys due, or to grow due the contractor under this agreement, as may be considered necessary by the comptroller of the city, may, at its option, be retained by the city until all suits or claims for damages shall have been settled or otherwise disposed of, and evidence to that effect furnished to the satisfaction of the comptroller." It also provided that, on the certification of final completion of the work as therein provided, the contractor should be entitled to the balance unpaid less "such sums as may lawfully be retained under any of the provisions of this contract set forth," and contains a further paragraph, under the heading "Condition Precedent," as follows:

"The contractor shall not be entitled to demand or receive payment for the work or materials, or any portion thereof, except in the manner set forth in

this agreement, nor unless each and every one of the promises, agreements, stipulations, terms and conditions herein contained on his part to be performed, kept, observed and fulfilled, has been performed, kept, observed and fulfilled, and the engineer shall have given his certificate to that effect."

It is further expressly provided in the contract that the city shall not be estopped by any certificate or payment "from demanding and recovering from the contractor such loss as it may sustain by reason of his failure to comply with the specifications."

[1] I am of opinion that the provisions of the specifications quoted, which require the contractor to take ample precautions to protect the work against fire and requiring him to make good all parts of the work damaged during construction, should be construed as applicable to damages, for which he is responsible, to the construction work as a whole, viz., the entire bridge, and not merely to the particular part of the work which he contracted to perform. It is contended that a further provision of the specifications, under the heading "Protection of Existing Work," requiring the contractor to protect the masonry piers and anchorages by such means as should be prescribed by the engineer, shows that the provisions to which reference has been lastly before made should be confined to the work covered by this contract. That contention is, I think, without force, for the reason that it is perfectly consistent with liability for damages to those structures from fire, to empower the engineer to require that they may be protected to avert damage if possible. It follows therefore that the plaintiff is liable for the damages caused by the first fire, and, since it failed to repair the damaged granite, the reasonable cost thereof was properly chargeable to its account and deducted from the final payment.

[2] On the same theory the plaintiff is liable for the damages caused by the second fire. It may be that plaintiff was not guilty of negligence in connection with that fire, and yet I think that presented a question of fact for the jury, for it knew the negligent manner in which the asphalt company was conducting the work, and that a fire had been caused in like manner a short time before the one in question, and it had been specially warned by the engineer. However, the consent which the commissioner of bridges gave "to the employment" of the asphalt company to perform the asphalting did not release the plaintiff from its liability to the city. The letter of the commissioner, which it is claimed is a consent to plaintiff's subletting the work, was written in answer to one from plaintiff, and, so far as material, is as follows:

"I note that you have arranged to employ certain subcontractors in the work of carrying out your contract for constructing the railings, stairways, etc., roadway and footwalk pavements, track and electrical equipments of the Manhattan Bridge. Pursuant to paragraph V of your contract, I hereby consent to the employment of the said subcontractors, namely: * * * Barber Asphalt Paving Company. Pennsylvania Steel Company. * * * It is expressly understood that the consent to employ the aforesaid contractors is not a consent to the assignment by you to them of any part of your contract, or any of the moneys to become due and payable under your contract."

It is quite clear, I think, that plaintiff thereafter continued liable as before for failing to take ample precautions to protect the work against

fire, and to repair damages caused by fire to any part of the bridge by its negligence or by the negligence of any contractor employed by it. If it had been intended to release any part of plaintiff's liability, it is reasonable to presume that the defendant would, at least, have required a formal assumption thereof by the asphalt company, if not a bond. This is not a case for the application of the rule by which one is not liable for the negligence of an independent contractor to whom work which may lawfully be performed is awarded. The plaintiff's liability does not depend on the doctrine of respondeat superior. The question here presented is to be decided on the contract obligations of the plaintiff to defendant, and from which, in giving the consent to the employment of the asphalt company, there was no intention to release it.

It follows that plaintiff was not entitled to recover, and that the judgment must be reversed, with costs, and the complaint dismissed, with costs, on defendant's motion duly made at the close of the evidence. All concur.